UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **KEILAND CONSTRUCTION LLC** | **CASE NO. 2:20-CV-00827** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **WEEKS MARINE INC.** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court are cross-motions for partial summary judgment [docs. 34, 36] filed on the breach of contract claim brought by plaintiff Keiland Construction, LLC ("Keiland") against defendant Weeks Marine, Inc. ("Weeks"). Both motions are opposed and are now ripe for ruling.

### I.
### BACKGROUND

This suit arises from Weeks's early termination of its subcontract with Keiland. Weeks, a New Jersey construction company, was acting as general contractor at the Venture Global LNG site in Cameron Parish, Louisiana. Weeks subcontracted work on a storm surge wall at the project site to Keiland, a Louisiana company, and Keiland began this work pursuant to a Short-Form Construction Subcontract executed with effective date of December 18, 2019. *See* doc. 1, att. 1 (complaint); doc. 36, att. 1 (executed copy of subcontract).

Section 5 of the subcontract provides the payment schedule, with compensation due upon the submission of monthly invoices and a total amount of $713,912.00 owed for the

1

work described. Doc. 1, att. 1, pp. 11–12. Meanwhile, Section 9 states that Weeks may, at its option and with written notice to Keiland, "terminate for convenience any of the Work under this subcontract in whole or in part at any time[.]" *Id.* at 13. Upon receiving notice of such termination, Keiland is "entitled to the actual and necessary expense of finishing its Work through the date of termination, the actual and necessary expense of withdrawing from the Project site, and twenty-one percent (21%) for overhead and profit associated with its Work through the date of termination." *Id.*

Weeks sent notice of its intent to terminate "effective immediately" to Keiland by email on March 18, 2020, and by undated letter received shortly thereafter. *See* doc. 34, atts. 4 & 5. Up to this point Keiland had sent one payment application to Weeks, for the amount of $252,674.92. Doc. 34, att. 6. After receiving the notice Keiland sent two additional payment applications, bringing the total amount billed to $578,803.25 and representing an 82 percent completion rate for the project. *Id.*; *see* doc. 34, att. 2 (affidavit of Keiland principal Keith DuRousseau). Keiland asserts that Weeks has failed to pay amounts due under the subcontract.[1]

On May 13, 2020, Keiland filed suit against Weeks in the 38th Judicial District Court, Cameron Parish, Louisiana, raising claims for breach of contract and violation of the Louisiana Unfair Trade Practices Act. Weeks removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[2] The parties have now filed cross-motions for partial summary judgment on the breach of contract claim. Weeks argues that, under the

---

[1] In its brief Weeks asserts that it has paid $200,000 to Keiland directly and $98,000 to its suppliers. Doc. 36, p. 8.
[2] Keiland also initially raised claims against Weeks's project manager Jansson Wurster, a Louisiana resident, but those claims were dismissed pursuant to a joint stipulation. *See* doc. 21.

terms of Section 9, Keiland is only entitled to recover the "actual and necessary expenses incurred" for all work performed through the date of termination as well as certain costs associated with the termination. Keiland maintains that it is entitled to be paid based on the original lump sum for work completed before the notice of termination and then based on the "actual and necessary expenses" for costs associated with finishing the work thereafter.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that a contract is read for its plain meaning and operates as the law between the parties. *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 439 (5th Cir. 2002). "[W]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Apache Deepwater, LLC v. W&T Offshore, Inc.*, 930 F.3d 647, 656 (5th Cir. 2019) (internal quotations and alterations omitted). This rule "does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties." *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir. 1994). Additionally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

Keiland argues that, under the plain language of the contract, it is entitled to be paid on a lump sum basis until the notice of termination and then on a cost-plus basis thereafter. Weeks maintains that Section 9 converts the payment structure for all work done under the contract to cost-plus upon notice of termination. To this end, it introduces parol evidence of the parties' negotiations (namely, adjustments made to the original Section 9 under its standard subcontract).[3]

In other words, the parties agree that Section 5 creates a lump sum contract, but disagree as to when Section 9 might allow termination to convert that contract to a cost-plus compensation structure. The relevant provision of Section 9 reads:

> Upon any such termination initiated by CONTRACTOR, SUBCONTRACTOR shall be entitled to the actual and necessary expense of **finishing** its Work through the date of termination, the actual and necessary expense of withdrawing from the Project site, **and twenty-one percent (21%) for overhead and profit associated with Work through the date of termination.** Upon any such termination initiated by OWNER, SUBCONTRACTOR shall only be entitled to compensation as provided through the Prime Contract.

Doc. 1, att. 1, p. 13 (emphasis added). The reference to "finishing" the work supports Keiland's position. However, the subsequent reference to "Work through the date of termination" is susceptible of both interpretations.

Where the terms of the contract are unambiguous, the court errs by "disregarding 'the letter of that clause . . . under pretext of pursuing its spirit'" and by considering parol evidence on the parties' intent. *Whitney Bank v. SMI Cos. Global, Inc.*, 949 F.3d 196, 205

---

[3] Weeks also notes that its interpretation is consistent with Louisiana Civil Code article 2765, which allows for termination of a construction contract upon payment of expenses incurred and "such damages as the case may require." However, this article does not restrict the parties' ability to set terms of cancellation within a construction contract or alter the court's obligation to begin with the plain language of those terms.

& n. 8 (5th Cir. 2020) (quoting La. Civ. Code art. 2046, cmt. b). But "when the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention of the parties." *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 563 (5th Cir. 2005). Additionally, "[i]f an ambiguity remains after applying the other general rules of construction, then the ambiguous contractual provision is to be construed against the drafter." *Chinook USA, L.L.C. v. Duck Commander, Inc.*, 721 F. App'x 361, 366 (5th Cir. 2018) (citing La. Civ. Code art. 2056).

By way of parol evidence, Weeks shows that the compensation provision of Section 9 under its standard short form subcontract ordinarily provides:

> Upon any such termination, SUBCONTRACTOR shall waive any claims for damages, including loss of anticipated profits on account thereof, but as the sole right and remedy of SUBCONTRACTOR, an equitable adjustment will be agreed between the parties.

Doc. 36, att. 1, pp. 2, 29. Through the parties' negotiations, however, the language was changed as shown above. Weeks has provided a sworn declaration from its vice president, who states that this change was made at Keiland's insistence "in order to give Keiland a comparable measure of compensation to what Weeks would receive in a termination for cause," as set forth in Section 10 of the subcontract.[4] *Id.* at 2. There is no evidence as to

---

[4] Section 10 provides in relevant part:
SUBCONTRACTOR shall not be entitled to any further payment until all of its Work has been completed, at which time, if the amount which would have been to SUBCONTRACTOR for the completion by SUBCONTRACTOR of all work hereunder, less all previous payments made to SUBCONTRACTOR, shall exceed the actual and necessary expense of finishing, including attorneys' fees, damages incurred through the default of SUBCONTRACTOR and twenty-one

the parties' intent or the negotiations beyond this self-serving and vague statement, however. Section 9 does not mirror the terms of Section 10's compensation provisions sufficiently to show that this compensation structure was supposed to replace the lump-sum form even for work completed before the notice of termination. The language of the contract remains too ambiguous to be clarified by this evidence, meaning that there is a genuine issue of fact precluding summary judgment on the breach of contract claim.

## IV.
### CONCLUSION

For the reasons stated above, both motions for summary judgment [docs. 34, 36] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 27th day of July, 2021.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

percent (21%) for overhead and profit if CONTRACTOR shall complete the work itself, such excess shall be paid by CONTRACTOR to SUBCONTRACTOR.
Doc. 1, att. 1, p.