UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**KEILAND CONSTRUCTION L L C**    CASE NO.  2:20-CV-00827

**VERSUS**    JUDGE JAMES D. CAIN, JR.

**WEEKS MARINE INC ET AL**    MAGISTRATE JUDGE KAY

## MEMORANDUM RULING

Before the court is a breach of contract suit filed by Keiland Construction, LLC ("Keiland") against Weeks Marine, LLC ("Weeks"). A one-day bench trial was held in this matter before the undersigned on November 7, 2022. Having considered the evidence and applicable law, as well as the post-trial memoranda submitted by the parties, the court now issues its ruling.

### I.
#### BACKGROUND

This suit arises from Weeks's early termination of its subcontract with Keiland. Weeks, a New Jersey company, was acting as general contractor at the Venture Global LNG Site in Cameron Parish, Louisiana, and subcontracted work on a storm surge wall at the site to Keiland, a Louisiana company. Keiland began this work pursuant to a Short-Form Construction Subcontract executed with effective date of December 18, 2019. Weeks sent notice of its intent to terminate the work "effective immediately" to Keiland by email on March 18, 2020, and by undated letter received shortly thereafter. Under the terms of the subcontract, it maintains, this action converted Keiland's compensation from a lump

sum basis to a cost-plus basis for all work performed. Keiland asserted, however, that the termination only converted compensation to a cost-plus basis for work performed between the notice of termination and the termination and that Weeks failed to pay outstanding sums due under the subcontract. Accordingly, it filed suit in the 38th Judicial District Court, Cameron Parish, Louisiana, raising a claim of breach of contract.[1] Doc. 1, att. 1.

Weeks removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. The parties then filed cross-motions for summary judgment on the breach of contract claim, arguing their respective interpretations of the Compensation and Termination for Convenience sections. Docs. 34, 36. The court found an ambiguity in the terms and denied both motions. Doc. 40. At the request of the parties, the matter was bifurcated for trial with damages deferred until after the contract interpretation issues had been settled. The matter then proceeded to a bench trial before the undersigned on November 7, 2022, at which additional parol evidence was adduced regarding the drafting of the subcontract.

## II.
### FINDINGS OF FACT & CONCLUSIONS OF LAW

**A. Evidence Adduced at Trial**

**1. Subcontract terms**

Section 5 of the subcontract provides the compensation terms and states:

COMPENSATION: As full consideration for the satisfactory performance by SUBCONTRACTOR of this subcontract, CONTRACTOR shall pay to

---

[1] Keiland initially raised claims against Weeks employee Jansson Wurster, but these were dismissed pursuant to a joint stipulation after Weeks raised allegations of improper joinder in its Notice of Removal. Docs. 1, 21. It also raised a claim under the Louisiana Unfair Trade Practices Act, but later dismissed same pursuant to Federal Rule of Civil Procedure 41(a)(2). Docs. 53, 54.

> SUBCONTRACTOR compensation in accordance with the price terms set forth below.

| Item # | Description | Quantity | UM | Unit Price | Extended Price |
|---|---|---|---|---|---|
| 1 | NW Gate Concrete Work | 1 | LS | $348,000.00 | $348,000.00 |
| 2 | North East Gate Concrete Work | 1 | LS | $318,375.00 | $318,375.00 |
| 3 | SE Emergency Gate Concrete Work | 1 | LS | $14,225.00 | $14,225.00 |
| 4 | Access Doors Concrete Work | 6 | EA | $2,900.00 | $17,400.00 |
| | | | | Total: | $698,000.00 |

> All pricing is firm for the duration of the Project. All unit priced quantities listed above are estimated quantities only. Payment will be made in accordance with actual quantities performed by SUBCONTRACTOR and approved by CONTRACTOR. Unit pricing shall remain the same irrespective of final quantities performed.
>
> SUBCONTRACTOR shall provide monthly invoices for work completed and payment shall be made within fourteen (14) days of CONTRACTOR'S receipt of payment from OWNER.
>
> CONTRACTOR shall be entitled to deduct and retain five percentage (5%) from every SUBCONTRACTOR invoice. Such retained percentage shall be the same as that required under the Prime Contract and shall be released to SUBCONTRACTOR in accordance with the terms of the Prime Contract.
> As a condition precedent to receiving its monthly payment, SUBCONTRACTOR shall execute a partial release, waiver of lien and affidavit of payment in the form indicated within Appendix E or in the form required under the Prime Contract if direct by CONTRACTOR. In addition, as a condition precedent to SUBCONTRACTOR receiving final payment, SUBCONTRACTOR shall execute a final release, waiver of lien and affidavit of payment in the form indicated within APPENDIX E or in the form required under the Prime Contract if directed by CONTRACTOR.

Doc. 87, att. 2, pp. 3–4. Meanwhile, Section 9 provides the rights and duties of the parties upon the contractor's unilateral termination of the subcontract:

> TERMINATION FOR CONVENIENCE: CONTRACTOR may, at its option, terminate for convenience any of the Work under this subcontract in whole or in part at any time by written notice to SUBCONTRACTOR. Such notice shall specify the extent to which the performance of the Work is

> terminated and the effective date of such termination. Upon receipt of such notice SUBCONTRACTOR shall:
> 1. Immediately discontinue the Work on the date and to the extent specified in the notice and place no further purchase orders or subcontracts for materials, services, or facilities, other than as may be required for completion of such portion of the Work that is not terminated;
> 2. Promptly obtain assignment or cancellation upon terms satisfactory to CONTRACTOR of all purchase orders, subcontracts, rentals, or any other agreements existing for the performance of the terminated work or assign those agreements as directed by CONTRACTOR.
> 3. Assist CONTRACTOR for the maintenance, protection, and disposition of work in progress, plant, tools, equipment, property, and materials acquired by SUBCONTRACTOR or furnished by CONTRACTOR under this subcontract; and
> 4. Complete performance of such portion of the Work which is not terminated.
>
> Upon any such termination initiated by CONTRACTOR, SUBCONTRACTOR shall be entitled to the actual and necessary expense of finishing its Work through the date of termination, the actual and necessary expenses of withdrawing from the Project site, and twenty-one percent (21%) for overhead and profit associated with its Work through the date of termination. Upon any such termination initiated by OWNER, SUBCONTRACTOR shall only be entitled to compensation as provided through the Prime Contract.

*Id.* at 5. This subcontract was signed by Weeks' vice president David Hafner and Keiland president Keith DuRousseau. Doc. 87, att. 2.

### 2. Parol evidence

The final paragraph of Section 9 in the Weeks/Keiland subcontract differs from the final paragraph of Section 9 in Weeks's standard form subcontract, which provides:

> Upon any such termination, SUBCONTRACTOR shall waive any claim for damages including loss of anticipated profits; on account thereof, but as the sole right and remedy of SUBCONTRACTOR, an equitable adjustment will be agreed between the parties.

Doc. 87, att. 1, p. 5. Instead, it more closely resembles the compensation terms under Section 10 ("Termination for Cause"):

> SUBCONTRACTOR shall not be entitled to any further payment until all of its Work has been completed, at which time, if the amount which would have been paid to SUBCONTRACTOR for the completion by SUBCONTRACTOR of all work hereunder less all previous payments made to SUBCONTRACTOR, shall exceed the actual and necessary expense of finishing, including attorneys' fees, damages incurred through the default of SUBCONTRACTOR and twenty-one percent (21%) for overhead and profit if CONTRACTOR shall complete the Work itself, such excess shall be paid by CONTRACTOR to SUBCONTRACTOR. However, if such cost and expense shall exceed the amount which would have been paid to SUBCONTRACTOR for completion by SUBCONTRACTOR of all Work hereunder, less all previous payments to SUBCONTRACTOR, SUBCONTRACTOR and its surety shall be liable for and shall immediately pay the difference to CONTRACTOR.

*Id.* Keiland principal/president Keith DuRousseau testified that he drafted the changes to Section 9, with the intent that the contract would only convert to cost-plus compensation for work completed after the notice of termination. Tr., pp. 24–27. He also testified that he intended for the compensation term to mirror that in Section 10, allowing for Keiland to be compensated on a cost-plus basis of twenty-one percent. *Id.* at 32–33. David Hafner, vice president of contracts for Weeks, testified that he signed the Keiland subcontract on behalf of Weeks and participated in the negotiations. *Id.* at 53–54. He saw the changes made by Keiland to Section 9 and interpreted them as converting all work under the subcontract as reimbursable on a cost-plus basis of 21 percent in the event of a termination for convenience. *Id.* at 55.

Weeks terminated the subcontract for convenience "effective immediately" via email sent on March 18, 2020. Doc. 87, att. 3. In that email it instructed that Keiland's

work under the subcontract would be completed by another subcontractor and that Keiland should not report to the job site tomorrow. *Id.* The parties dispute the amount of work completed up to that date. In an undated follow-up termination letter, sent on March 20, Weeks responded to an email from Keiland from the previous day that is not in evidence by stating that the decision to terminate Keiland "was based on various reasons and was not a decision taken lightly by Weeks." Doc. 87, att. 4. Weeks then reprinted Keiland's obligations under Section 9 of the subcontract and stated, in relevant part:

> Additionally, Keiland is entitled to recover the actual and necessary expenses for (a) Work performed through the date of termination; and (b) withdrawal from the project site. Please gather this information, along with all supporting documentation, and submit your cost proposal to [Weeks] by April 3, 2020. In addition, Keiland is entitled to a markup of twenty-one percent (21%) of the costs included in "(a)" above.
> As you've indicated in your referenced email, it was [Week's] responsibility to provide the embeds for the project. You also assert that [Weeks] did not provide the embeds in a timely manner. As [Weeks] has stated already, if Keiland feels they were delayed due to a lack of said materials, and if Keiland provides appropriate documentation of such delays including resulting reasonable associated costs, [Weeks] is willing to include such costs in "(a)" above.

Doc. 87, att. 4; *see* doc. 88, att. 1 (providing date letter was sent).

Email exchanges between the parties followed, with Keiland inquiring about the status of its outstanding payment applications for work completed up to the date of termination. Doc. 88, att. 1. Through these exchanges, which occurred in March and April of 2020, the parties made their respective interpretations of the compensation terms of Section 9, as outlined above, clear. *See id.* Debates over the compensation terms and payment applications already submitted continued through early May 2020. Doc. 88, atts. 2 & 3. Keiland then filed this suit in state court on May 13, 2020. Doc. 1, att. 1.

B. **Law & Application**

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that a contract is read for its plain meaning and operates as the law between the parties. *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 439 (5th Cir. 2002). "[W]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Apache Deepwater, LLC v. W&T Offshore, Inc.*, 930 F.3d 647, 656 (5th Cir. 2019) (internal quotations and alterations omitted). This rule "does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties." *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir. 1994). Additionally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

As the court already found on the parties' cross-motions for summary judgment, there is an ambiguity in the plain language of Section 9's compensation terms that requires looking to parol evidence:

> [T]he parties agree that Section 5 creates a lump sum contract, but disagree as to when Section 9 might allow termination to convert that contract to a cost-plus compensation structure. The relevant provision of Section 9 reads:
>> Upon any such termination initiated by CONTRACTOR, SUBCONTRACTOR shall be entitled to the actual and necessary expense of **finishing** its Work through the date of termination, the

> actual and necessary expense of withdrawing from the Project site, **and twenty-one percent (21%) for overhead and profit associated with Work through the date of termination.** Upon any such termination initiated by OWNER, SUBCONTRACTOR shall only be entitled to compensation as provided through the Prime Contract.

Doc. 1, att. 1, p. 13 (emphasis added). The reference to "finishing" the work supports Keiland's position. However, the subsequent reference to "Work through the date of termination" is susceptible of both interpretations.

Where the terms of the contract are unambiguous, the court errs by "disregarding 'the letter of that clause . . . under pretext of pursuing its spirit'" and by considering parol evidence on the parties' intent. *Whitney Bank v. SMI Cos. Global, Inc.*, 949 F.3d 196, 205 & n. 8 (5th Cir. 2020) (quoting La. Civ. Code art. 2046, cmt. b). But "when the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention of the parties." *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 563 (5th Cir. 2005). Additionally, "[i]f an ambiguity remains after applying the other general rules of construction, then the ambiguous contractual provision is to be construed against the drafter." *Chinook USA, L.L.C. v. Duck Commander, Inc.*, 721 F. App'x 361, 366 (5th Cir. 2018) (citing La. Civ. Code art. 2056).

By way of parol evidence, Weeks shows that the compensation provision of Section 9 under its standard short form subcontract ordinarily provides:

> Upon any such termination, SUBCONTRACTOR shall waive any claims for damages, including loss of anticipated profits on account thereof, but as the sole right and remedy of SUBCONTRACTOR, an equitable adjustment will be agreed between the parties.

Doc. 36, att. 1, pp. 2, 29. Through the parties' negotiations, however, the language was changed as shown above. Weeks has provided a sworn declaration from its vice president, who states that this change was made at Keiland's insistence "in order to give Keiland a comparable measure of compensation to what Weeks would receive in a termination for cause," as set forth in Section 10 of the subcontract. *Id.* at 2. There is no evidence as to the parties' intent or the negotiations beyond this self-serving and vague statement, however. Section 9 does not mirror the terms of Section 10's compensation provisions sufficiently to show that this compensation structure was supposed to replace the lump-sum form even for work completed before the notice of termination. The language of the contract remains too ambiguous to be clarified by this evidence, meaning that there is a genuine issue of fact precluding summary judgment on the breach of contract claim.

Doc. 40 (footnote omitted).

That evidence has now been provided in the form of testimony showing that the term was drafted by Keiland and that there was no meeting of the minds with respect to its interpretation by Weeks. Moreover, as Weeks shows, its interpretation is consistent with a range of case law reflecting an apparent industry standard under which fixed price contracts are converted to cost-reimbursable contracts upon termination.[2] Under Louisiana law, an ambiguous clause must be strictly construed against the drafter. La. Civ. Code arts. 2056–57; *U.S. Abatement Corp. v. Mobil Expl. & Prod. U.S.*, 79 F.3d 393, 400 (5th Cir. 1996). Where, as here, one party adds new language to a form contract during negotiations, that party is then the drafter of the new language and any ambiguity therein is construed against it. *Car Kits, Inc. v. Bolt-On Parts, Inc.*, 439 So.2d 479, 483 (La. Ct. App. 1st Cir. 1983). In light of this standard, the ambiguous term must be construed against Keiland and Weeks's interpretation prevails: Keiland's compensation terms switched to the 21 percent cost-plus basis for all work completed through the effective date of termination and it is not entitled to payment on the lump-sum basis for any work completed under the subcontract.

---

[2] *CLN20, Inc. v. United States*, 99 Fed. Cl. 734, 762 (2011), aff'd, 495 F. App'x 94 (Fed. Cir. 2012); *Praecomm, Inc. v. United States*, 78 Fed. Cl. 5, 12 (2007), aff'd, 296 F. App'x 929 (Fed. Cir. 2008); *Bowman Constr. Co. v. United States*, 154 Fed. Cl. 127, 140 (2021); *White Buffalo Const., Inc. v. United States*, 52 Fed. Cl. 1, 4 (2002); *Best Foam Fabricators, Inc. v. United States*, 38 Fed.Cl. 627, 638 (1997); *Anlagen–und Sanierungstechnik GmbH*, ASBCA No. 37,878, 91–3 B.C.A. ¶ 24,128; *Seven Science Industries*, ASBCA No. 23,337, 80–2 B.C.A. ¶ 14,518 at 71,555; *Caskel Forge, Inc.*, ASBCA No. 7638, 1962 B.C.A. ¶ 3318 at 17,108.

## III.
### CONCLUSION

For the reasons stated above, judgment will be entered in favor of Weeks Marine Inc. and its interpretation of the contract held as binding. The issue of damages remains deferred pending further motion by the parties.

**THUS DONE AND SIGNED** in Chambers on the 16th day of November, 2022.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**