UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **KEILAND CONSTRUCTION LLC** | **CASE NO. 2:20-CV-00827** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **WEEKS MARINE INC ET AL** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the court are cross-motions for summary judgment [docs. 95, 97] filed, respectively, by plaintiff Keiland Construction LLC ("Keiland") and defendant Weeks Marine, Inc. ("Weeks") on the proper calculation of damages. Both motions are opposed. Docs. 98, 104.

**I.**
**BACKGROUND**

This suit arises from Weeks's early termination of its subcontract with Keiland. Weeks, a New Jersey company, was acting as general contractor at the Venture Global LNG Site in Cameron Parish, Louisiana, and subcontracted work on a storm surge wall at the site to Keiland, a Louisiana company. Keiland began this work pursuant to a Short-Form Construction Subcontract executed with effective date of December 18, 2019. Weeks sent notice of its intent to terminate the work "effective immediately" to Keiland by email on March 18, 2020, and by undated letter received shortly thereafter. Under the terms of the subcontract, it maintains, this action converted Keiland's compensation from a lump sum basis to a cost-plus basis for all work performed. Keiland asserted, however, that the

termination only converted compensation to a cost-plus basis for work performed between the notice of termination and the termination and that Weeks failed to pay outstanding sums due under the subcontract. Accordingly, it filed suit in the 38th Judicial District Court, Cameron Parish, Louisiana, raising a claim of breach of contract.[1] Doc. 1, att. 1.

Weeks removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. The matter was bifurcated for trial with damages deferred until after the contract interpretation issues had been resolved. After a bench trial, the undersigned sided with Weeks on the contract interpretation and concluded that the termination converted Keiland's compensation to a cost-plus basis of 21 percent for all work performed through the date of termination. Doc. 91. The parties have now filed cross-motions for summary judgment on the damages due to Keiland. Docs. 95, 97. Specifically, Weeks asserts that Keiland cannot show any remaining actual costs after its (Weeks's) prior payments of $298,452.18, and that Weeks is instead entitled to a return of the excess amount it paid. Keiland maintains that it incurred $563,391.77 in costs with the applicable 21 percent markup and is thus owed $264,939.59 after deducting Weeks's prior payments. Both parties also assert that they are the prevailing party in this dispute and entitled to attorney fees from the other under the subcontract.

---

[1] Keiland initially raised claims against Weeks employee Jansson Wurster, but these were dismissed pursuant to a joint stipulation after Weeks raised allegations of improper joinder in its Notice of Removal. Docs. 1, 21. It also raised a claim under the Louisiana Unfair Trade Practices Act, but later dismissed same pursuant to Federal Rule of Civil Procedure 41(a)(2). Docs. 53, 54.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

# III.
## LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that a contract is read for its plain meaning and operates as the law between the parties. *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 439 (5th Cir. 2002). "[W]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Apache Deepwater, LLC v. W&T Offshore, Inc.*, 930 F.3d 647, 656 (5th Cir. 2019) (internal quotations and alterations omitted). This rule "does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties." *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir. 1994). Additionally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

As determined at the bench trial, Weeks's termination converted Keiland's compensation structure to cost-plus under § 9 of the subcontract, entitling the latter "to the actual and necessary expenses of finishing its Work through the date of termination, the actual and necessary expenses of withdrawing from the Project site, and twenty-one percent (21%) for overhead and profit associated with its Work through the date of termination." Doc. 91, p. 4. Keiland claims it is owed the following: (1) $92,621.77 for labor costs for

the E&A Craft Laborers incurred between January 31 and March 20, 2020; (2) $142,400.18 for labor costs incurred by its own employees who were billed to the project; (3) $2,396.35 for the markup on equipment; and (4) $27,521.29 for the markup on materials. Doc. 97, att. 1. Weeks disputes the labor costs. It also asserts that (1) Keiland is not entitled to the markup on materials or equipment because it (Weeks) paid those vendors directly and (2) it (Weeks) overpaid when making a final good-faith $200,000 payment to Keiland and is entitled to a refund of $116,039.81. Rather than sifting through the different payments to arrive at a final amount owed, the court will determine in which categories Keiland has properly proven its entitlement to payment/markup under the contract.

In a cost-plus contract "there is an implicit agreement between the parties that costs will be reasonable." *M. Carbine Restoration v. Sutherlin*, 544 So.2d 455, 458 (La. Ct. App. 4th Cir. 1989). Accordingly, the plaintiff's duty is "to submit an itemization of each and every expenditure made during the course of the project" and the burden will then shift to defendant to rebut this evidence. *Id.* at 458–59. In 1983 the Louisiana Fourth Circuit Court of Appeal held:

> The proper basis for determining the cost of the improvements are the invoices and the statements of accounts expended. Claimant must produce the best evidence available in support of his claim. *Breaux v. Laird,* 230 La. 221, 88 So.2d 33 (1956); *Dikert v. Ruiz,* 231 So.2d 633 (La.App. 4th Cir.1970). A bill or invoice for materials used when accompanied by proof that it was paid is sufficient proof to justify an award therefor. *Dikert v. Ruiz, supra; Lambert v. Allstate Insurance Company,* 195 So.2d 698 (La.App. 1st Cir.1967).

*Provenzano v. Populis*, 428 So.2d 556, 558–59 (La. Ct. App. 4th Cir. 1983). Based on this holding a split has developed as to whether a plaintiff must show that the costs were

actually paid by him in order to obtain reimbursement under a cost-plus contract. *Compare Burdette v. Drushell*, 837 So.2d 54 (La. Ct. App. 2d Cir. 2002) (plaintiff cannot recover for those charges "for which proof of payment was not shown") with *Pollard v. Schiff*, 161 So.3d 48, 59 (La. Ct. App. 4th Cir. 2015) (*Provenzano* only requires claimant to produce "best evidence available" to support the costs). This court agrees with the latter interpretation. While paid invoices are the best evidence of a contractor's actual costs under a cost-plus contract, it would be manifestly unjust to limit him to recovery only upon proof of payment if there is no contract term requiring that he actually pay those suppliers or vendors first. At the same time, the fact that plaintiff has not paid the costs invoiced or otherwise alleged will make him vulnerable to defendant's rebuttal evidence that these are not the actual costs of the work.

### A. Markup for equipment and materials

Neither party disputes that Keiland submitted invoices for costs and equipment to Weeks. Neither disputes that Weeks paid $87,041.00 to HD Supply directly for materials and that it paid $11,411.58 to H&E Equipment directly for equipment. Doc. 97, pp. 23–25; doc. 97, att. 9, pp. 153–54, 158. Neither party has paid the other material invoices submitted by Keiland, totaling $7,638.58 before markup. *See generally* doc. 97, att. 3, pp. 118–82. Weeks thus maintains that Keiland is not entitled to markup on any of these costs. But the charges from HD Supply and H&E Equipment were paid, signaling Weeks's acceptance of their reasonableness. Nothing in § 9 of the subcontract suggests that costs cease to become costs within the scope of Keiland's work if Weeks pays the supplier directly. Weeks could otherwise evade the contractual markup by paying all invoices on this matter

directly. Accordingly, Keiland is entitled to $2,396.43 for the markup on equipment costs and $19,882.71 for the markup on materials for those vendors paid directly by Weeks.

As for the outstanding materials invoices, Keiland has submitted (1) the invoices themselves, all dated from the project period; (2) Keiland principal Keith DuRousseau's affidavit attesting to those costs; and (3) the report of its expert, David Minton, describing those costs as reasonable. The only substantive dispute Weeks offers is that the invoice for $840.00 to Iles Medical included testing for seven employees who were not involved with the Project. Keiland offers no response to this assertion. Upon review of the Iles Medical invoices (Exhibit A-13 to Keiland's Motion), the court notes that each urine panel cost $35.00. Accordingly, it will deduct $245 for the amount billed by Iles for a total of $7,393.58 plus markup of $1,552.65 owed on outstanding material costs.

### B. Labor costs for E&A Craft Laborers

Keiland alleges that it incurred $221,001.17 in actual labor costs to E&A. Weeks made a $200,000 payment to Keiland in March 2020 to cover its remaining costs. Doc. 97, att. 9, p. 85. Keiland interprets this amount to cover $165,289.00 in actual costs plus the 21 percent markup. It thus argues that, after subtracting Keiland's alleged $20,825.00 in demobilization costs, Weeks has only paid $144,454.25 towards the actual labor costs billed by E&A as well as the $30,335.59 markup on those costs. Weeks maintains that these costs are inflated; that E&A's actual labor costs were based on a fixed rather than hourly price and that Keiland only incurred $61,750.00 in labor costs.

Keiland's principal, Keith DuRousseau, stated that he had a lump sum subcontract with E&A and that Keiland now owes E&A 75% of that contract price plus labor accounted

for in four change orders. Doc. 97, att. 3, p. 4 ¶¶ 35–37. Accordingly, Keiland maintains that the Contractor Production Reports, showing the hours E&A laborers, worked on the project, are the best evidence of its labor costs. These purport to show costs of $221,001.17 based on 3,067 regular hours at an hourly rate of $43.61 and 1,560 overtime hours at an hourly rate of $55.97, in addition to the two hours per day that Keiland states it paid each E&A worker for commuting to the Project. Doc. 97, p. 14; doc. 97, att. 3, p. 3, ¶ 20. Keiland also relies on the report of its expert, David Minton, who provided a contract value analysis attesting to the reasonableness of Keiland's claimed costs. Doc. 97, att. 4.

    Weeks maintains that Keiland has not met its burden, pointing to contradictions in the latter's various submissions. Keiland's summary spreadsheets submitted for each E&A laborer reflect a regular hourly rate of $43.70 and an overtime hourly rate of $65.39. *See* doc. 97, att. 3, pp. 66–103. In Mr. Minton's affidavit, however, the rates become the $43.61 regular hourly rate and $55.97 overtime hourly rate described in Keiland's motion. Doc. 97, att. 4. Additionally, Mr. DuRousseau's affidavit seems to propose three different figures for total labor costs. *See* doc. 97, att. 3, p. 4 ¶ 37 ($211,956.04); *id.* at ¶ 41 ($211,001.17); and pp. 66–103 (totaling $236,121.14). Finally, Keiland contends that both it and E&A "incurred an additional $46,401.75 in actual labor costs" due to change orders submitted by Weeks. Doc. 105, att. 1, p. 4; *see* doc. 97, att. 3, pp. 104–11. Weeks testified, however, that it disputed the accuracy of the change orders and the documentation provided by Keiland. Doc. 97, att. 9, pp. 149–51. Instead, Weeks maintains that some of the work in those orders was part of the original contract and/or priced inappropriately. *Id.* at 151–52. However, it has not put forth any evidence on this point other than its own self-serving

testimony. Meanwhile, Keiland has documented the change orders and there is no record of Weeks's disagreement at the time the work was completed.

Under the subcontract, E&A was entitled to lump sum payment based on completion of the project. Doc. 104, att. 3, pp. 177–80. The invoice shows that E&A billed Keiland for 75% project completion on July 30, 2020, several months after the contract was terminated. *Id.* at 181. This amounts to $165,554.00, from which the company then deducted prior payments for a total outstanding amount of $100,554.00.[2] *Id.* The subcontract is on a "paid-when-paid" basis, providing that E&A will typically be paid within 30 days of submitting its pay applications "but not earlier than when payment is received from the Owner (or Government) for the work performed." Doc. 98, att. 9, p. 56; Doc. 104, att. 3, p. 179, ¶ 23.

Keiland contends that its (Keiland's) work was 82 percent complete at the time of termination while Weeks sets the percentage at 49 percent. *Compare* doc. 97, att. 3, pp. 9–14 *with* doc. 97, att. 9, pp. 70–71. Neither side has provided sufficient evidence to resolve this factual discrepancy on summary judgment. Weeks, however, has failed to come forward with any expert testimony to counter that submitted by Keiland. While the discrepancies in wage rates are concerning, they may have something to do with the fact that Weeks demanded an hourly accounting from Keiland of what was originally a lump sum contract. Furthermore, Minton's report is based on contract documents, pictures of the work as it progressed, labor summaries, and documentation of the equipment and materials used. Doc. 97, att. 4, p. 11. Although his review depends in part on the accuracy of

---

[2] This amount includes the unpaid invoice cited above as well as one referenced on that document but not in evidence for $35,000.00.

Keiland's submissions, it also includes verifiable data. Weeks has made no challenge to Minton's qualifications or experience, and in the absence of any rebuttal evidence the court finds his report plus E&A's invoice and the timesheets to provide adequate support for Keiland's claim. Accordingly, Keiland is entitled under its subcontract with Weeks to 75 percent of the subcontract labor price with E&A, the additional $35,000.00 that appears to have been invoiced in relation to the change orders, plus markup of 21 percent.

### C. In-house Labor Costs

Keiland also contends it is entitled to additional costs and markup relating to its own employees who were billed to the project. Specifically, it alleges that its estimator, project manager, and superintendent billed the project for $117,686.10 in labor for the Project and that the company also incurred $20,835.00 in labor costs for demobilization. Keiland further contends that Weeks paid the demobilization costs plus markup, but that it is still owed $142,400.18 for the outstanding labor costs plus markup. Doc. 97, p. 17. Weeks disputes these costs, asserting that the labor of such employees is traditionally treated as overhead and that Keiland has submitted no competent evidence to show that it deviated from this standard. *See* doc. 97, att. 9, pp. 141–42 (Weeks's 30(b)(6) deposition).

When a contractor makes a claim for his own labor under a cost-plus contract, that claim is subject to "strong scrutiny" because "[s]uch a claim runs contra to the usual and ordinary concept of the supervisory type service rendered by a 'cost-plus' contractor." *Foster v. Soule*, 310 So.2d 170, 172 (La. Ct. App. 1st Cir. 1975). "[T]he law is clear that for a contractor to charge for his own labor, there must be an agreement between the parties allowing this charge." *Higgins v. Rini*, 597 So.2d 1238, 1240 (La. Ct. App. 3d Cir. 1992).

Accordingly, the claim should be supported by a specific agreement between the parties that the contractor will perform some labor on the job and make separate charge for it. In the absence of such an agreement, the court will presume that none exists. *Foster*, 310 So.2d at 172.

Nothing in the Keiland/Weeks contract provides that Keiland will charge for its own labor on the project. Keiland's self-serving testimony is not enough to vary these terms, given the above caselaw on industry standards and the lack of evidence that Weeks agreed to such an arrangement. Accordingly, any services of Keiland employees on the Project were covered by the 21 percent markup and cannot be separately charged to Weeks.

### D. Demobilization Costs

Weeks also contests the demobilization costs of $20,835.00, plus 21 percent markup, claimed by Keiland. These include a total of $10,635.00 billed for the labor of Keiland employees Keith DuRousseau (president), AJ Smith (superintendent), Zane Long (project manager), Amie Higgins (project administrator), and Bishmal Regmi (accountant). Doc. 97, att. 13. They also include 24 hours, at a rate of $425/hour, billed by Keiland's counsel for a total of $10,200.00. The court finds no basis for granting Keiland's attorney fees under the guise of demobilization costs. The court also notes that § 9 entitles Keiland "to the actual and necessary expenses of finishing its Work through the date of termination, the actual and necessary expenses of withdrawing from the Project site, and twenty-one percent (21%) for overhead and profit associated with its Work through the date of termination." Doc. 87, att. 2, p. 5. All of the demobilization costs necessarily arose after the date of termination, which occurred on March 18, 2020, with immediate effect. Doc.

91, p. 1; doc. 87, att. 3. Accordingly, it does not appear that Keiland is entitled to markup on these costs.

Finally, Weeks asserts that Keiland's own labor costs billed to demobilization are unsupported and inflated. It does not appear that these time sheets were reviewed by Minton, as he only includes the project manager and superintendent in his demobilization costs though somehow arrives at the same price. *See* doc. 97, att. 4, p. 33. Additionally, given the caselaw supra on contractors charging for their own labor, Keiland's unsupported and self-generated timesheets are insufficient to prove that any additional hours its own employees spent on the Project post-termination could properly be billed as demobilization costs. Accordingly, Keiland has not met its burden of showing entitlement to any demobilization costs under the contract.

### E. Attorney Fees

Finally, § 21 of the subcontract provides:

> ATTORNEYS FEES. The non-prevailing party in any dispute under this subcontract shall pay all costs and expenses, including expert witness fees and attorneys' fees, incurred by the prevailing party in resolving such dispute.

Doc. 87, att. 2, p. 9. Both parties make a claim for attorney fees under this section. "State law applies in determining whether attorney's fees should be awarded in state law cases." *CK DFW Partners Ltd. v. City Kitchens, Inc.*, 541 F.Supp.2d 839, 840 (N.D. Tex. 2008) (internal quotations omitted). Under Louisiana law, attorney fees are only allowed where specifically authorized by statute or contract. *Bamburg v. Air Systems LLC*, 324 So.3d 213, 219 (La. Ct. App. 2d Cir. 2021). A court abuses its discretion by awarding attorney fees

incurred for portions of litigation on which a party did not prevail. *LHO New Orleans LM, LP v. MHI Leasco New Orleans, Inc.*, 983 So.2d 217, 230 (La. Ct. App. 4th Cir. 2008).

Here disputes arose as to (1) the interpretation of § 9 and (2) remaining damages owed. The first issue was tried by bench trial, with Weeks prevailing in its interpretation of the subcontract though it did not prevail at the earlier cross-motions for summary judgment. Weeks is therefore entitled to costs and attorney fees in connection with the bench trial though not the pre-trial motions. Neither party, however, can be said to have prevailed on the issue of damages as the court has rejected the arguments advanced by both sides in large part. Accordingly, neither side is entitled to attorney fees in conjunction with these post-trial motions for summary judgment.

## IV.
### CONCLUSION

For the reasons stated above, the Motions for Summary Judgment [docs. 95, 97] will be **GRANTED IN PART** and **DENIED IN PART** and judgment will be entered to the effect that Weeks is entitled to reimbursement for demobilization costs plus markup on those costs paid to Keiland but obligated to pay (1) $22,278.60 for markup on equipment and materials costs for those vendors paid directly by Weeks; (2) $8,946.23 for outstanding materials costs plus markup; and (3) $221,001.17 plus markup of $46,410.25 for labor costs of E&A Craft Laborers. These amounts should be adjusted against Weeks's $200,000.00 payment to Keiland as well as any other prior payments.

Finally, Weeks is entitled to costs attorney fees associated with the bench trial of November 7, 2022, and is ordered to submit a memorandum on the appropriate amount due within fourteen days of this ruling.

**THUS DONE AND SIGNED** in Chambers on the 5th day of May, 2023.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE

Case 2:20-cv-00827-JDC-KK   Document 108   Filed 05/05/23   Page 14 of 14 PageID #: 3256